**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda Kuchenberg,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>    Defendant. | No. CIV 10-726-TUC-GEE<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §405(b). The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73.

The Magistrate Judge concludes the final decision of the Commissioner must be reversed. The Commissioner's decision is not supported by substantial evidence and free from legal error. The case will be remanded for payment of benefits.

PROCEDURAL HISTORY

On August 28, 2007, Kuchenberg filed an application for disability insurance benefits. (Tr. 82). She alleged disability beginning on May 2, 2007, due to "[d]epression, bipolar, delayed sleep phase. . . ." (Tr. 124). Her claim was denied initially (Tr. 57) and upon

reconsideration. (Tr. 63). Kuchenberg requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Lauren R. Mathon on June 8, 2009. (Tr. 9, 67, 68-71). In her decision, dated October 23, 2009, the ALJ found Kuchenberg was not disabled. (Tr. 9-18).

Kuchenberg appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3); *Bass v. Social Sec. Admin.*, 872 F.2d 832, 833 (9th Cir. 1989). Kuchenberg subsequently filed the instant action appealing the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a). She filed a motion for summary judgment on April 21, 2011. (Doc. 12).

Claimant's Work History and Medical History

Between 2005 and 2007, Kuchenberg worked as a customer service representative and as a radio disc jockey. (Tr. 36, 112). In early 2007, Kuchenberg was working full-time and taking care of her mother. (Tr. 499; treatment note 4/23/2009, record 204 of 233). When her mother died in April of 2007, she "lost it" and quit her job because "working full-time was too much." *Id.*, (Tr. 266, 267). Kuchenberg alleged disability beginning on May 2, 2007, due to "[d]epression, bipolar, delayed sleep phase. . . ." (Tr. 124). At the time of the hearing, in June of 2009, she was working 8-12 hours per week as a radio disc jockey and a receptionist for a beauty salon. (Tr. 28).

Kuchenberg has suffered from mental illness off and on since childhood. (Tr. 223, 288, 622). The record contains treatment notes from La Frontera Center, Inc., starting in June of 2006 and extending to June of 2009. (Tr. 212-283, 474-730). At various times, Kuchenberg has been treated with Prozac, Trazodone, and Cymbalta for depression; Propranolol and Ativan for anxiety; Eskalith for mania; and Ambien for insomnia. (Tr. 368, 475). The treatment record documents an Axis I diagnosis of (1) 296.33 [major depressive disorder severe without

psychotic features[1]] and (2) 307.45 delayed sleep phase. (Tr. 264, 267, 269, 273, 275, 277, 278, 280, 281).

In October of 2007, Kuchenberg was examined by a psychologist, Noelle Rohen, Ph.D., for the disability determination service. (Tr. 288-92). Rohen reviewed the record, conducted a clinical interview, and performed a mental status exam. *Id*. Rohen offered the following diagnosis:

| | |
|---|---|
| Axis I: | 296.90 Mood Disorder NOS, Currently Depressed, Severe |
| | 309.81 Posttraumatic Stress Disorder |
| Axis II: | V71.09 No Diagnosis |
| Axis III: | Defer to medical records |

(Tr. 290). Rohen found Kuchenberg's understanding, memory, social interaction, and adaptation skills to be good. (Tr. 292). She found Kuchenberg's ability to sustain concentration and pace, however, to be poor. *Id*. She explained that "[Kuchenberg] can be expected to maintain concentration and persistence at a good to fair level until depressive severity increases, at which time she can be expected to fail to attend altogether until such impedances as hypersomnia, fatigue, and severe depressive mood subside." *Id*. Rohen made the following assessment of Kuchenberg's employment prospects: "With regard to work, it is expected that claimant will continue to struggle as she reportedly has in the past, performing fairly well at work, when she is able to go, but not managing regular attendance on a full-time sustained basis." (Tr. 291).

In November of 2007, Eugene Campbell, Ph.D., reviewed the medical record and completed a Psychiatric Review Technique form. (Tr. 294, 353). He documented (1) Affective Disorders and (2) Anxiety-Related Disorders. (Tr. 294, 353). He found mild limitation in "Maintaining Social Functioning" and "Maintaining Concentration, Persistence or Pace." (Tr. 304). Campbell noted that Kuchenberg's symptoms were exacerbated when her mother died, but with treatment she was making improvements. (Tr. 306). He opined that her mental impairments would be non-severe by May of 2008. *Id*.

---

[1] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 319 (4th ed., 1999).

In May of 2008, Alan Goldberg, Psy.D., reviewed the medical record and completed a Psychiatric Review Technique form. (Tr. 381). He documented (1) Affective Disorders and (2) Anxiety-Related Disorders. (Tr. 381). He found moderate limitation in "Maintaining Social Functioning" and "Maintaining Concentration, Persistence or Pace." (Tr. 391).

Goldberg completed a Mental Residual Functional Capacity Assessment. (Tr. 377). He found moderate limitation in Kuchenberg's "ability to understand and remember detailed instructions," "ability to carry out detailed instructions," "ability to maintain attention and concentration for extended periods," "ability to complete a normal workday and workweek . . . and to perform at a consistent pace," "ability to interact appropriately with the general public," "ability to get along with co-workers," and "ability to respond appropriately to changes in the work setting." (Tr. 377-78).

The record contains a Medical Source Statement received from La Frontera and dated May 20, 2008. (Tr. 374). It is signed, but the signature is illegible. *Id*. The statement describes Kuchenberg's functional limitations as "occasional difficulties" with understanding and memory, "difficulties with concentration . . . interpersonal relations," "labile affect," and "rigidity that interferes with her ability to adjust." *Id*.

The record contains a letter from La Frontera staff including Bruce Roberts, M.D., dated May 20, 2009. (Tr. 395). The letter gives Kuchenberg's diagnosis as Major Depression Disorder, Recurrent and opines that "[a]lthough Ms. Kuchenberg has been able to maintain part-time employment, she does not have the mental ability to work a sufficient amount of hours to meet the most basic of financial obligations." *Id*.

On June 8, 2009, Kuchenberg appeared with counsel at a hearing before ALJ Lauren R. Mathon. (Tr. 20). At the time of the hearing, Kuchenberg was 45 years old and had completed 2 years of college. (Tr. 25, 35).

Kuchenberg testified that she is single and lives alone. (Tr. 34). She does her own cooking, laundry, and cleaning. (Tr. 50).

She explained she is unable to work because of "overwhelming depression" and PTSD. (Tr. 26). She has panic attacks three times a week. (Tr. 34). She has memory problems she

attributes to a vehicle accident in high school. (Tr. 31). Kuchenberg also has fibromyalgia and chronic diarrhea. (Tr. 30). She had lap band surgery in January of 2006 for morbid obesity. (Tr. 51, 469).

Kuchenberg also has back pain and neck pain. (Tr. 47). She estimated she can stand for 20 minutes before she needs to sit down. (Tr. 48). She finds it difficult to lift a 24-pack of water. (Tr. 49).

Kuchenberg currently works 4 hours per week as a disc jockey and six hours per week as a receptionist for her girlfriend's beauty salon. (Tr. 28, 29). She explained she could not work full-time because she does not have the stamina or "mental durability." (Tr. 29). She does, however, try to attend a musical jam session twice a week. (Tr. 33, 156).

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the

claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *See* 20 C.F.R. Pt. 404, Subpt. P, App.2; *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir. 1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has only exertional limitations, the claim may be resolved based only on the grids. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006).

If the claimant has significant non-exertional limitations, the grids do not apply. *Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non-exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). Mental limitations, for example, are non-exertional. *Id.* at 1340-41. If significant non-exertional limitations prevent the claimant from performing the full range of work in any

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

If the claimant has both exertional and non-exertional limitations, the ALJ must consult the grids first before considering the testimony of a vocational expert at step five. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006). If the grids direct a finding of disability, that finding must be adopted by the Commissioner. *Lounsburry,* 468 F.3d at 1116.

The ALJ's Findings

At step one of the disability analysis, the ALJ found Kuchenberg "has not engaged in substantial gainful activity since May 2, 2007, the alleged onset date . . . ." (Tr. 11). At step two, she found Kuchenberg has "the following severe impairments: depression, posttraumatic stress disorder, degenerative joint disease (neck and lumbar and cervical spine), and fibromyalgia . . . ." (Tr. 11). At step three, the ALJ found Kuchenberg's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 12). The ALJ then analyzed Kuchenberg's residual functional capacity (RFC). (Tr. 14). She found Kuchenberg "has the residual functional capacity to perform unskilled to semi-skilled medium work . . . ." (Tr. 14). At step four, the ALJ found Kuchenberg could perform her past relevant work as a customer service representative. (Tr. 16). At step five, the ALJ found, in the alternative, that Kuchenberg was not disabled by using the grids. (Tr. 17).

STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial

1 gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.
2 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

3       The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
4 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is
5 not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).
6 Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept
7 as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a
8 preponderance." *Id.*.

9       "Where evidence is susceptible to more than one rational interpretation, the ALJ's
10 decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider
11 the entire record as a whole and may not affirm simply by isolating a specific quantum of
12 supporting evidence." *Id.*

13       In evaluating evidence to determine whether a claimant is disabled, the opinion of a
14 treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.
15 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he
16 sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.
17 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner
18 may reject that opinion only if he provides specific and legitimate reasons supported by
19 substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between
20 a medical opinion as to a physical condition and a medical opinion on the ultimate issue of
21 disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

22       "The opinion of an examining physician is, in turn, entitled to greater weight than the
23 opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).
24 "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the
25 uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor,
26 even if contradicted by another doctor, can only be rejected for specific and legitimate reasons
27 that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if she decides to reject it, "she must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

Kuchenberg argues first that the ALJ improperly discounted the opinion of her treating physician, Bruce Roberts, M.D., and adopted the less restrictive opinion of the non-examining state agency physician Goldberg. Roberts is a treating physician, and his opinion should trump the opinion of a non-examining physician unless the ALJ provides "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996); *see also Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (applying the "specific and legitimate" test).

In this case, the ALJ offered the following reasons for discounting the treating physician's opinion:

> [T]he undersigned finds that the medical source statement by treating physician at La Frontier [sic] Center is not entitled to controlling weight. His assessment of the claimant's impairments is considerably restrictive, is unsupported by treatment notes, and fails to specify the limits of the claimant's impairments that preclude full[-]time work.

(Tr. 16). The court finds these justifications sufficient.

As the ALJ noted, Roberts' opinion letter is exceedingly brief. *See* (Tr. 395). It is entirely conclusory without any supporting reference to the treatment record. *Id.* It fails to

1 specify Kuchenberg's various impairments or how they affect her ability to perform work related tasks. *Id*. These are specific and legitimate reasons for discounting the opinion of the treating physician. *Batson v. Commissioner of Social Security Administration,* 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole. . . or by objective medical findings. . . ."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("[A]n ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.").

For her second claim of error, Kuchenberg argues the ALJ improperly discounted the opinion of her examining physician, Noelle Rohen, Ph.D. In her report, Rohen offered the following conclusions:

> Ms. Kuchenberg presents with chronic history of posttraumatic stress disorder and depression that fairly regularly become severe. . . . Claimant historically has had a very hard time maintaining regular full[-]time work attendance, though she does okay with part[-]time and appears motivated to work. . . . With regard to work, it is expected that claimant will continue to struggle as she reportedly has in the past, performing fairly well at work when she is able to go, but not managing regular attendance on a full-time sustained basis.

(Tr. 290-91). The ALJ discounted Rohen's opinion explaining as follows:

> Likewise, the consultative examiner's opinion is not entitled to significant weight. She indicated that the claimant would have a difficult time managing regular attendance on a full[-]time sustained basis. . . . She further determined that the claimant would have limitations for twelve months and explained that, while she does have good understanding and memory, social interaction and adaptation, she has poor sustained concentration and persistence. . . . Her conclusions are unsupported by the evidence. The record shows that the claimant has been able to manage two jobs and outside activities for a significant length of time and that she has demonstrated little evidence of problems with her memory and recall.

(Tr. 16).

The ALJ found that Kuchenberg's ability to manage two jobs and outside activities was inconsistent with Rohen's opinion that Kuchenberg lacks the persistence and concentration required for full-time employment. There is, however, no evidence that these two jobs combined with Kuchenberg's outside activities require the same amount of mental stamina necessary for full-time employment. Kuchenberg works at the radio station for four hours per week. (Tr. 28). It is an environment that she knows well and is not stressful for her. (Tr. 28). She also works as a receptionist for her friend's beauty salon four to eight hours per week. (Tr.

29). Together, these jobs total only eight to twelve hours of work per week. This is far short of the amount of work necessary for full-time employment. *See Rollins v. Massanari*, 261 F. 3d 853, 859 (9th Cir. 2001) ("An ability to keep to an 8-hour a day, 5-day a week schedule without accumulating too many absences is a pre-requisite for many jobs."). Kuchenberg also participates in social activities during the week, but recreational activities are generally not performed with the same persistence and pace that is required on the job. *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir.1996) (Isolated activities such as pulling weeds, mowing the lawn, painting a ceiling and housecleaning or grocery shopping do not indicate that a plaintiff could perform full-time competitive work.). The fact that Kuchenberg is able to work eight to twelve hours per week and participate in social activities is not a specific and legitimate reason to discount Rohen's opinion that Kuchenberg cannot work full-time. *See also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) ("This court has noted that occasional symptom-free periods–and even the sporadic ability to work– are not inconsistent with disability.") (punctuation omitted).

The ALJ also noted that there was little evidence that Kuchenberg had problems with memory or recall. She did not, however, explain why this fact was somehow inconsistent with Rohen's opinion as to Kuchenberg's persistence and concentration.

The ALJ improperly discounted the opinion of Kuchenberg's examining physician, Noelle Rohen. (Tr. 16). The decision of the ALJ therefore is not supported by substantial evidence and free from legal error. The court does not reach Kuchenberg's remaining claims of error.

The Commissioner suggests Rohen's opinion is inconsistent with other aspects of the record such as Kuchenberg's application for unemployment benefits or vocational rehabilitation. (Doc. 13, pp. 17-18). The ALJ, however, did not advance these arguments in her decision. The court, therefore, cannot consider them. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

1         The ALJ failed to give specific and legitimate reasons for crediting the opinion of the state agency non-examining physician over the opinion of Kuchenberg's examining physician, Noelle Rohen. Accordingly, Rohen's opinions should be credited as a matter of law. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law.").

        "Where we conclude that a claimant's testimony or a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir.1999); *see also Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians). In this case, the ALJ improperly discounted the opinion of Kuchenberg's examining physician. Crediting this opinion leads necessarily to a finding of disability.

        Rohen opined that Kuchenberg's mental impairment was so severe that she was limited to part-time work. (Tr. 290-91). Kuchenberg cannot work full-time and is therefore disabled. *See* SSR 96-8p; *see also Rollins v. Massanari*, 261 F. 3d 853, 859 (9th Cir. 2001) ("An ability to keep to an 8-hour a day, 5-day a week schedule without accumulating too many absences is a pre-requisite for many jobs."); *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000).

        There are no outstanding issues to be resolved. Remand of the case would serve no useful purpose. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) ("We may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."). A finding of disability should be entered. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

//
//
//

IT IS ORDERED that Kuchenberg's motion for summary judgment filed on April 21, 2011, is GRANTED. (Doc. 12) The final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

The Clerk of the Court is instructed to enter judgment accordingly and close this case.

DATED this 1st day of July, 2011.

Glenda E. Edmonds
United States Magistrate Judge